UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PIEDAD ANGAMARCA, as Parent and
Natural Guardian of J.G., and PIEDAD
ANGAMARCA, individually,

    Plaintiff,

- against -

NEW YORK CITY DEPARTMENT OF
EDUCATION,

    Defendant.

**ORDER**

19 Civ. 2930 (PGG)

---

PAUL G. GARDEPHE, U.S.D.J.:

    This is an action for injunctive relief under the Individuals with Disabilities Education Act ("IDEA"). Plaintiff is the mother of J.G., an eight-year-old boy who suffers from a brain injury. (Am. Cmplt. (Dkt. No. 10) ¶¶ 6-7) Defendant is the New York City Department of Education ("DOE").

    J.G. attended the International Academy of Hope (the "Hope Academy") during the 2016-17 and 2017-18 school years. DOE paid J.G.'s tuition for those years pursuant to stipulations of settlement it entered into with Plaintiff. In July 2018, J.G. began attending the International Institute for the Brain (the "Brain Institute"), but DOE refused to fund J.G.'s education at that school. (Id. ¶¶ 11, 13, 15) The Amended Complaint alleges that DOE's "failure to provide J.G. with a pendency placement has violated J.G.'s rights" under IDEA and New York's Education Law. (Id. ¶ 32)

    On April 26, 2019, Plaintiff moved for a temporary restraining order and a preliminary injunction that would require DOE to fund J.G.'s education at the Brain Institute, on

the grounds that the Brain Institute is the applicable pendency placement for J.G. (Mot. (Dkt. No. 17)) For the reasons stated below, Plaintiff's application will be denied.

## BACKGROUND

### I. FACTS

As the result of a brain injury, J.G. is non-verbal and non-ambulatory. He "has highly intensive management needs and requires a high degree of individualized attention, instruction, and intervention." (Ashanti Decl. (Dkt. No. 18) ¶ 2)

In December 2014, a Committee on Preschool Special Education ("CPSE") prepared an Individual Education Plan ("IEP") for J.G. for the 2014-15 school year (the "2014 DOE IEP"). (See Ashanti Decl., Ex. M (SRO Decision) (Dkt. No. 18-3) at 157) The 2014 DOE IEP recommends that, inter alia, J.G. be placed in a 6:1+2 class (six students, one teacher, and two aides) at an "Approved Special Education Program," and receive occupational therapy three times per week for 30 minutes per session; physical therapy three times per week for 30 minutes per session at school; physical therapy three times per week at home for 45 minutes per session; visual education services two times per week for 45 minutes per session; and speech therapy four times per week for 30 minutes per session. (Id.) Plaintiff did not challenge this IEP, which was implemented during the 2015-16 school year. (Id.)

On March 30, 2016, a Committee on Special Education ("CSE") prepared an IEP for J.G. for the 2016-17 school year (the "2016 DOE IEP"). The 2016 DOE IEP recommends a 6:1+1 class (six students, one teacher, and one aide); occupational therapy three times per week; physical therapy five times per week; vision education services three times per week; individualized speech therapy four times per week; and speech therapy in a group of no more than three students once per week. All services were to be provided in 60 minute sessions.

2

(Ashanti Decl., Ex. A (2016 DOE IEP) (Dkt. No. 18-1) at 27) The 2016 DOE IEP recommends that J.G. be placed in "a NYS Approved Non-Public Day School if there is the possibility that a fuller range of [J.G.'s] needs could be addressed in that setting (compared to a District 75 [i.e., public specialized school] placement)." (See id. at 32) The IEP does not recommend a specific placement for J.G., however. (Id.)

In a June 23, 2016 letter, Plaintiff notified DOE of her intention to unilaterally place J.G. at the Hope Academy for the 2016-17 school year. (Ashanti Decl., Ex. B (June 23, 2016 Ltr.) (Dkt. No. 18-1) at 36) The letter asks DOE to provide prospective payment of tuition for J.G. to attend the Hope Academy. (Id.) On March 3, 2017, Plaintiff and DOE entered into a Stipulation of Settlement in which DOE agreed to pay for J.G's tuition at the Hope Academy for the 2016-17 school year.[1] (Ashanti Decl., Ex. C (2016-17 Stipulation of Settlement) (Dkt. No. 18-1) at 40)

The 2016-17 Stipulation of Settlement states that Defendant's payment of tuition pursuant to the Stipulation "shall not be relied upon by any party to establish or support the position that [the Hope Academy] constitutes either a recommendation by the Department, or an agreement by the parties, that [J.G] attend the [Hope Academy] or that [the Hope Academy] constitutes an appropriate placement." (Id. at 42-43) The 2016-17 Stipulation further provides that the "terms and conditions agreed to in this Stipulation shall be for the limited purpose of the settlement of the claims regarding the [2016-17] School Year. This Stipulation does not

---

[1] In the 2016-17 Stipulation of Settlement, DOE also agreed to issue Related Service Authorizations (RSAs) for occupational therapy three times per week; physical therapy five times per week; vision education services three times per week; individualized speech therapy four times per week; and speech therapy in a group of three once per week; and a full time transportation paraprofessional. (Ashanti Decl., Ex. C (2016-17 Stipulation of Settlement) (Dkt. No. 18-1) at 41)

3

authorize [the Hope Academy] and/or services to be the 'then current educational placement' or alter [J.G.'s] rights to pendency as otherwise exists under applicable statutes, regulations or case law." (Id. at 43)

On March 3, 2017, the Hope Academy prepared an educational plan for J.G. for the 2017-18 school year. Hope Academy's 2017-18 educational plan for J.G. is similar to the program set forth in the 2016 DOE IEP. The Hope Academy educational plan provides for a 6:1+1 class; occupational therapy three times per week; physical therapy five times per week; vision education services three times per week; and individualized speech therapy four times per week. All services were to be provided in 60 minute sessions. Hope Academy's 2017-18 educational plan differs from the 2016 DOE IEP in that it recommends (1) speech therapy once a week in a group of two rather than three students; and (2) parent counseling and training once a month. (See 2017-18 Hope Academy Educational Plan (Dkt. No. 31-2) at 14)

The CSE issued an IEP for J.G. for the 2017-18 school year (the "2017 DOE IEP"). The 2017 DOE IEP recommends, inter alia, a "12:1 + (3:1)" special education program; occupational therapy three times per week for 30 minutes per session; physical therapy five times per week for 30 minutes per session; individual speech therapy four times per week for 30 minutes per session; group speech therapy – in a group of 3 – once per week for 30 minutes per session; vision education services three times per week for 30 minutes per session; and parent counseling and training once a month for 60 minutes per session. (See 2017 DOE IEP at 13-14) The 2017 DOE IEP – like the 2016 DOE IEP – does not recommend a specific placement, but instead recommends a "NYC DOE Specialized School" for JG. (See 2017 DOE IEP at 13)

In a June 20, 2017 letter, Plaintiff notified DOE of her "intent to unilaterally place [J.G.] at [the Hope Academy] for the 2017-2018 school year," given that Defendant "ha[d] not

4

offered ... a program or placement that can appropriately address his educational needs" for that school year. (Ashanti Decl., Ex. D (June 20, 2017 Ltr.) (Dkt. No. 18-1) at 46) The parties subsequently entered into a Stipulation of Settlement for the 2017-2018 school year in which DOE agreed to "issue payment ... for [J.G.'s] tuition costs incurred by the Parent for the School Year."[2] (Ashanti Decl., Ex. E (2017-18 Stipulation of Settlement) (Dkt. No. 18-1) at 50) The 2017-18 Stipulation provides that DOE's payment of tuition "shall not be relied upon by any party to establish or support the position that the program and/or services described herein constitutes either a recommendation by [DOE], an agreement by the parties that [J.G.] attend [the Hope Academy], or that [the Hope Academy] constitutes an appropriate placement." (Id. at 53) The Stipulation further states that

> [t]he terms and conditions agreed to in this Stipulation shall be for the limited purpose of the settlement of the claims regarding the [2017-18] School Year. Neither this Stipulation nor the Department's payment ... may be relied up[on] by any Party to indicate, establish, or support the position that the School and/or Services provided and/or funded ... comprises in whole or in part, the Student's educational program for purposes of the "pendency" or "stay put" provisions of the Individuals with Disabilities Act (IDEA) and its implementing regulations ... and/or New York State law and regulations .... This Stipulation does not alter [J.G.'s] right to pendency as otherwise exists under applicable statutes, regulations, or case law.

(Id.)

---

[2] In the 2017-18 Stipulation of Settlement, DOE agreed to issue Related Service Authorizations (RSAs) for individualized occupational therapy three times a week; individualized physical therapy five times a week; individualized vision education services three times a week; individualized speech therapy four times a week; speech therapy in a group of two once a week; and parent counseling and training once a month. All services were to be provided in 60 minute sessions. (Ashanti Decl., Ex. E (2017-18 Stipulation of Settlement) (Dkt. No. 18-1) at 52) Plaintiff has submitted affidavits from related service providers stating that they provided these services to J.G. during the 2017-18 school year. (See Related Service Affidavits (Dkt. No. 29-1) at 1-6)

5

On May 25, 2018, the CSE issued an IEP for J.G. for the 2018-19 school year (the "2018 DOE IEP"). DOE subsequently recommended that J.G. be placed at The School of Science and Applied Learning. (See Ashanti Decl., Ex. G (Due Process Cmplt.) (Dkt. No. 18-2) at 3) Plaintiff rejected both the IEP and the placement. (Id.) In a June 21, 2018 letter, Plaintiff notified DOE of her "intent to unilaterally place [J.G.] at the [Brain Institute] for the 2018-2019 school year." (See Ashanti Decl., Ex. F (June 21, 2018 Ltr.) (Dkt. No. 18-1) at 57) In her June 21, 2018 letter, Plaintiff asserted that "DOE has not conducted an annual IEP for [J.G.]. . . . [and that J.G.'s] parents remain willing and ready to entertain an appropriate DOE program and an appropriate public or approved non-public school placement once an IEP has been conducted." The letter states that "[a]t this time . . . the parents have no choice other than to enroll [J.G.] at [the Brain Institute], which is an appropriate placement. . . ." (Id.)

J.G. began attending the Brain Institute on July 9, 2018. (See Ashanti Decl. (Dkt. No. 18) ¶ 13; id., Ex. H (Enrollment Contract) (Dkt. No. 18-2) at 7)

## II. PROCEDURAL HISTORY

On July 9, 2018 – the same day J.G. began attending the Brain Institute – Plaintiff filed a due process complaint against DOE, contending that DOE had "failed to offer [J.G.] a Free and Appropriate Public Education ("FAPE") for school year 2018-2019 by committing several substantive and procedural errors under the IDEA and state law while developing the IEP issued on 5/25/2018 and subsequent placement recommendation at . . . The School of Science and Applied Learning." Plaintiff's complaint further alleged that DOE had "impeded [J.G.'s] right to a FAPE and significantly impeded [Plaintiff's] opportunity to participate in the decision-making process regarding the provision of a FAPE to [J.G.]." (See Ashanti Decl., Ex. G (Due Process Cmplt.) (Dkt. No. 18-2) at 3) The due process complaint "requests [that] an interim

6

order of pendency be issued immediately," pursuant to the "stay-put" provisions of IDEA and New York law, "which give the child the right to remain in his or her current educational placement at the local district's expense during the pendency of any administrative or judicial proceedings." (Id. at 2 (citing 20 U.S.C. § 1415(j); New York Education Law 4404(4))).

Impartial Hearing Officer ("IHO") Mindy Wolman conducted a hearing concerning J.G.'s pendency placement on July 30, 2018 and August 21, 2018. At the hearing, Plaintiff argued that J.G.'s pendency placement was the Brain Institute, and Plaintiff sought an order directing DOE to fund that pendency placement for the duration of the due process proceedings. Plaintiff argued that the placement described in the 2016 DOE IEP – "a NYS Approved Non-Public Day School if there is the possibility that a fuller range of [J.G.'s] needs could be addressed in that setting (compared to a District 75 [public specialized school] placement)" – constitutes J.G.'s pendency placement, because the 2016 DOE IEP is the most recent unchallenged IEP for J.G. Plaintiff further argued that (1) the 2016 DOE IEP was implemented by Hope Academy; and (2) the educational program implemented by the Brain Institute is "substantially similar" to the educational program that was offered by Hope Academy, and that accordingly the Brain Institute was, in effect, implementing the 2016 DOE IEP. (See Ashanti Decl., Ex. J (Hearing Tr.) (Dkt. No. 18-3) at 1-87; Ashanti Decl., Ex. K (IHO Decision) (Dkt. No. 18-3) at 90-91)[3]

On October 8, 2018, the IHO issued an interim decision concluding that "the Hearing Record does not support a finding that the [2016 DOE] IEP was ever implemented," and that in any event, "the Hearing Record does not support a finding that [the Brain Institute

---

[3] The Ashanti Declaration incorrectly identifies the hearing transcript and the IHO decision as Exhibits I and J, rather than Exhibits J and K. (See Ashanti Decl. (Dkt. No. 18) ¶¶ 15, 16)

7

educational] program is substantially similar to [the educational program that had been provided by Hope Academy] or that [the Brain Institute] is implementing the . . . 2016 [DOE] IEP." (Id., Ex. K (IHO Decision) (Dkt. No. 18-3) at 93, 94) Accordingly, IHO Wolman rejected Plaintiff's argument that the Brain Institute is J.G.'s pendency placement. (Id. at 95) The IHO did not make a finding as to what is J.G.'s pendency placement. (Id.)

Plaintiff appealed the IHO's interim decision, and on December 26, 2018, State Review Officer ("SRO") Carol Hauge issued a decision dismissing her appeal. (Ashanti Decl., Ex. M (SRO Decision) (Dkt. No. 18-3) at 141-158) The SRO agreed with the IHO that "the parent did not provide any evidence to support her assertions that the . . . 2016 [DOE] IEP was the last agreed-upon IEP or that [the Hope Academy] implemented the . . . 2016 [DOE] IEP."[4] (Id. at 155) The SRO also agreed that "the hearing record does not establish that [the Brain Institute] could be found to be the student's pendency placement by virtue of being substantially similar to the . . . 2016 [DOE] IEP program and services." (Id. at 155-56)

"Having disposed of the parent's contentions that the . . . 2016 [DOE] IEP formed the basis for the student's pendency placement as the last agreed-upon IEP or through its implementation at [Hope Academy]," the SRO went on to make a determination as to what is J.G.'s pendency placement:

> Because the parent has challenged all of the student's IEPs beginning with the 2015-16 school year through the current 2018-19 school year and no other IHO or SRO decision has been issued establishing a pendency placement for the student, the evidence in the hearing record points to only one option: to wit, the student's 2014-15 IEP dated December 2014 as the only unchallenged IEP.

---

[4] The SRO further reasoned that "the parent's 10-day notice letter indicates that the parent directly disputed the district's recommendation for a State-approved nonpublic school, and as a result, the March 2016 IEP could not have been the last agreed-upon placement for purposes of pendency." (Id. at 155)

8

(Id. at 157) The SRO thus concluded that J.G.'s "pendency placement for the instant proceedings must be based on [J.G.'s] 2014-15 IEP as the last-agreed upon and implemented IEP." (Id.)

Plaintiff initiated this action on April 2, 2019, and filed an Amended Complaint on April 5, 2019. (See Cmplt. (Dkt. No. 1); Am. Cmplt. (Dkt. No. 10)) The Amended Complaint contends that the SRO "erred as a matter of law in finding that: 1) the 2016[]10-Day Notice was a rejection of the March 2016 IEP; [and] 2) J.G.'s pendency placement should be based on the 2014-2015 IEP." Plaintiff also contends that the SRO "erred as a matter of law in failing to grant J.G. pendency placement at [the Brain Institute] based on an alternative theory of operative placement in recognition of J.G.'s entitlement to pendency." (Am. Cmplt. (Dkt. No. 10) ¶ 21)

The Amended Complaint seeks an order vacating the SRO decision and directing DOE "to fund J.G.'s placement at [the Brain Institute] for the 2018-2019 school year, until a final adjudication on the due process complaint is complete." (Id., ad damnum clause) On April 26, 2019, Plaintiff filed an application for a temporary restraining order and preliminary injunction, seeking the same relief sought in the Amended Complaint. (Mot. (Dkt. No. 17))

## DISCUSSION

### I. APPLICABLE LAW

#### A. IDEA'S Pendency Provision

Title 20 U.S.C. § 1415(j) – IDEA's pendency or "stay-put" provision" – provides that "during the pendency of any proceedings conducted pursuant to this section [of IDEA] . . . the child shall remain in the then-current educational placement of the child. . . ." 20 U.S.C. § 1415(j). "Th[is] provision seeks to maintain the educational status quo while the parties' dispute

9

is being resolved." T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist., 752 F.3d 145, 152 (2d Cir. 2014).

"To determine a child's 'then-current educational placement,' a court typically looks to: (1) 'the placement described in the child's most recently implemented IEP'; (2) 'the operative placement actually functioning at the time when the stay-put provision of the IDEA was invoked'; or (3) 'the placement at the time of the previously implemented IEP.'" Doe v. East Lyme Bd. of Educ., 790 F.3d 440, 452 (2d Cir. 2015) (quoting Mackey ex rel. Thomas M. v. Bd. of Educ. for Arlington Cent. Sch. Dist., 386 F.3d 158, 163 (2d Cir. 2004))

### B. Standard for Injunctive Relief

As a general matter, in this Circuit a preliminary injunction is properly granted only where

> the plaintiff has demonstrated "either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the [plaintiff]'s favor." Second, the court may issue the injunction only if the plaintiff has demonstrated "that he is likely to suffer irreparable injury in the absence of an injunction." . . . Third, a court must consider the balance of hardships between the plaintiff and defendant and issue the injunction only if the balance of hardships tips in the plaintiff's favor. Finally, the court must ensure that the "public interest would not be disserved" by the issuance of a preliminary injunction.

Salinger v. Colting, 607 F.3d 68, 79-80 (2d Cir. 2010) (citations omitted). The same standard applies to applications for a temporary restraining order. See Vogster Entm't, L.L.C. v. Mostovoy, No. 09-CV-1036 RRM/RER, 2009 WL 691215, at *2 (E.D.N.Y. Mar. 16, 2009) ("In order to obtain a temporary restraining order, Plaintiff must demonstrate that (i) the order is necessary to prevent irreparable harm, and (ii) that Plaintiff is likely to succeed on the merits of its claims or that there are sufficiently serious questions going to the merits of the claims to make

them a fair ground for litigation, with a balance of the hardships tipping decidedly in Plaintiff's favor.").

The Second Circuit has recognized, however, that IDEA's pendency or "stay-put" provision "is, in effect, an automatic preliminary injunction. The statute substitutes an absolute rule in favor of the status quo for the court's discretionary consideration of the factors of irreparable harm and either a likelihood of success on the merits or a fair ground for litigation and balance of hardships." Zvi D. by Shirley D. v. Ambach, 694 F.2d 904, 906 (2d Cir. 1982); see also Arlington Cent. Sch. Dist. v. L.P., 421 F. Supp. 2d 692, 696 (S.D.N.Y. 2006) ("Pendency has the effect of an automatic injunction, which is imposed without regard to such factors as irreparable harm, likelihood of success on the merits, and a balancing of the hardships."); M.G. v. New York City Dep't of Educ., 982 F. Supp. 2d 240, 247 (S.D.N.Y. 2013) (same). The purpose of this "automatic injunction" is "'that all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with their placement is ultimately resolved.'" Student X v. New York City Dep't of Educ., No. 07-CV-2316(NGG)RER, 2008 WL 4890440, at *20 (E.D.N.Y. Oct. 30, 2008) (emphasis removed) (quoting Mackey, 386 F.3d at 160-61)

Relying on these precedents, Plaintiff argues that she need not demonstrate a likelihood of success on the merits or irreparable harm in order to secure injunctive relief. (Pltf. Br. (Dkt. No. 19) at 11) The premise for the "automatic injunction," however, is a showing by Plaintiff that the school at which J.G. is currently educated is in fact J.G.'s pendency placement. To the extent Plaintiff suggests that she need not demonstrate a likelihood of success as to this issue, she misapprehends the relevant Second Circuit law.

11

The automatic injunction takes effect only after the pendency placement determination is made. Accordingly, should the Court agree with Plaintiff that the Brain Institute constitutes J.G.'s pendency placement, the Court would order DOE to fund that placement during the pendency of the due process proceedings, and would do so without requiring Plaintiff to demonstrate irreparable harm and a likelihood of success on the merits of her due process complaint, and without conducting a balancing of the hardships. But the "automatic injunction" aspect of IDEA's stay-put provision does not excuse Plaintiff from her obligation to demonstrate that the school at which J.G. is currently educated is in fact J.G.'s pendency placement.

Zvi D. is illustrative. In that case, the Second Circuit affirmed the district court's denial of a preliminary injunction ordering DOE to fund Zvi D's schooling where plaintiff "ha[d] not established that [the school where Zvi D was then being educated] was Zvi's 'current educational placement.'" See Zvi D., 694 F.2d at 906. In sum, Plaintiff's application for injunctive relief will fail absent a showing that the Brain Institute constitutes J.G.'s "then-current educational placement" within the meaning of IDEA's stay-put provision.

## II. ANALYSIS

### A. J.G.'s "Current Educational Placement"

The SRO determined that the placement described in the 2014 DOE IEP constitutes J.G.'s pendency placement because it is "the last-agreed upon and implemented IEP." (Ashanti Decl., Ex. M (SRO Decision) (Dkt. No. 18-3) at 157) For the reasons discussed below, this Court concludes that J.G.'s pendency placement cannot be the placement described in the 2014 DOE IEP.

The SRO acknowledges that, in making a determination of "current educational placement" for purposes of pendency, hearing officers, review officers, and courts must consider

12

"(1) the placement described in the student's most recently implemented IEP; (2) the operative placement actually functioning at the time when the due process proceeding was commenced; or (3) the placement at the time of the previously implemented IEP." (See Ashanti Decl., Ex. M (SRO Decision) (Dkt. No. 18-3) at 149) While the SRO considered the placement described in J.G.'s "most recently implemented IEP," the SRO did not consider "the operative placement actually functioning at the time the due process proceeding was commenced."

While the 2014 DOE IEP is "the last agreed upon and implemented IEP," it is not reasonable under the circumstances of this case to treat the placement described in that IEP as J.G.'s pendency placement. Stated another way, it is not reasonable to conclude that a placement described in an IEP issued five years ago – when J.G. was four years old – sets forth a placement for J.G. that is appropriate now, when J.G. is eight years old and after he has received at least four years of specialized services and treatment. Indeed, a finding that a placement described in a 2014 IEP constitutes J.G.'s "current educational placement" runs counter to the purpose of the stay-put provision, which is "to maintain the educational status quo while the parties' dispute is being resolved." The placement described in the 2014 IEP does not reflect the status quo.[5]

Given the absence of any recent "agreed to and implemented IEP," the most reasonable approach to determining J.G.'s "current educational placement" is to look to "the operative placement actually functioning at the time when the stay-put provision of the IDEA

---

[5] One purpose of the annual IEP is, of course, to take stock of a student's progress and to use that analysis to inform the educational plan for the coming year. For example, the 2016 DOE IEP addresses in detail the progress J.G. has made over the past year. (See Ashanti Decl., Ex. A (2016 DOE IEP) (Dkt. No. 18-1) at 1 ("[J.G.] has made steady progress in academic achievement throughout the past year."; id. at 2 ("His body control has improved well"; id. at 4 ("[J.G.] has achieved his long-term vision goals this year. . . . [He] has made significant progress"; id. at 11 ("[J.G.] is making steady gains with sensory seeking/self-stimulatory behaviors")) This analysis demonstrates that it is unreasonable to rely on a long-outdated IEP in determining what is a child's pendency placement.

13

was invoked." East Lyme Bd. of Educ., 790 F.3d at 452. Here, IDEA's stay-put provision was invoked with Plaintiff's filing of the due process complaint on July 9, 2018 – the same day that J.G. began attending the Brain Institute, and less than two weeks after the 2017-18 school year at Hope Academy had concluded.[6]

Given that Plaintiff filed her due process complaint the same day that J.G. began classes at the Brain Institute, the Brain Institute cannot reasonably be regarded as the "current educational placement." The purpose of the stay-put provision is to preserve the educational status quo, but there was no educational status quo to preserve at the Brain Institute – J.G. had just begun that same day his education at that facility. Accordingly, the Court concludes that Hope Academy is the "operative placement actually functioning at the time" Plaintiff filed her due process complaint, and that the educational status quo sought to be preserved is the educational program that Hope Academy provided to J.G. during the 2017-18 school year.

## B. Whether the Brain Institute's Educational Program for J.G. is Substantially Similar to Hope Academy's Educational Program for J.G.

"[I]t is the [United States] Department[] [of Education's] longstanding position that maintaining a child's placement in an educational program that is substantially and materially similar to the former placement is not a change in placement." Assistance to States for the Education of Children With Disabilities and Preschool Grants for Children With Disabilities, 71 FR 46540-01 (Aug 14, 2006). Accordingly, J.G.'s move from Hope Academy to the Brain Institute may not constitute a change in placement if J.G.'s educational program at the Brain Institute is "substantially and materially similar" to the educational program he received at Hope Academy.

---

[6] The 2017-18 Hope Academy school year ended on June 26, 2018. (See Ashanti Decl., Ex. E (2017-18 Stipulation of Settlement) (Dkt. No. 18-1) at 49)

14

The United States Department of Education's Office of Special Education Programs has outlined four factors relevant to determining whether a student's move to a different school constitutes a change in educational placement for purposes of pendency under IDEA. These factors include:

> "[1] whether the educational program set out in the child's IEP has been revised; [2] whether the child will be able to be educated with nondisabled children to the same extent; [3] whether the child will have the same opportunities to participate in nonacademic and extracurricular services; and [4] whether the new placement option is the same option on the continuum of alternative placements."

Gore v. D.C., 67 F. Supp. 3d 147, 152 n.4 (D.D.C. 2014) (quoting Letter to Fisher, 21 I.D.E.L.R. 992 (1994) at 3).

Generally, a change in educational placement occurs where there has been "a fundamental change in, or elimination of[,] a basic element of the [child's] education program." Id. (quoting Lunceford v. D.C. Bd. of Educ., 745 F.2d 1577, 1582 (D.C. Cir. 1984); see also 8 N.Y.C.R.R. 200.1(g) (providing that, under New York law, a change in a student's educational program occurs where there is a "a change in any one of the components of the [IEP for] a student. . . ."

Here, Plaintiff argues that the Brain Institute's educational program for J.G. is substantially similar to Hope Academy's educational program for J.G.:

> [T]he programs [at both schools] consist of: a 6:1:1 special education class; Physical Therapy (5x60, 1:1); Occupational Therapy (3x60, 1:1); and 1:1 paraprofessional during the school day. Both the programs for 2016-2017 and 2017-2018 school year have Speech and Language Therapy (4x60, 1:1) and Speech and Language Therapy, (1x60, group) whereas the [Brain Institute's] 2018-2019 program also has Speech and Language Therapy, (5x60, 1:1). All programs include special transportation accommodations: a travel paraprofessional, limited travel time, air conditioning, and a wheelchair-accessible vehicle.

(Pltf. Br. (Dkt. No. 19) at 20)

15

As to many programs and services offered by the two schools, the Brain Institute's 2018-19 educational plan for J.G. is similar if not identical to Hope Academy's 2017-18 educational plan for J.G.[7] However, as to two services recommended in both schools' educational plans – vision education services three times a week for sixty minutes per session, and parent training and counseling once a month for sixty minutes per session (see 2017-18 Hope Academy Educational Plan (Dkt. No. 31-2) at 14; Ashanti Decl., Ex. I (Brain Institute Educational Plan) (Dkt. No. 18-2) at 50) – the Brain Institute was not able to provide these services when J.G. began attending school there.

At the impartial hearing, Tiffany Semm, the Brain Institute's Director of Special Education – and a former employee of Hope Academy – testified that not "every element of the [Brain Institute's] program recommendation [for J.G.] . . . was in place at the start of the [20]18/[20]19 school year." (Ashanti Decl., Ex. J (Hearing Tr.) (Dkt. No. 18-3) at 50-51) In particular, Ms. Semm testified that the Brain Institute does "not . . . have [a] vision therapist . . . and . . . also did not have a social worker to do parent training and counseling until August 1st." (Id. at 51)

The Brain Institute's educational plan for J.G. emphasizes the importance of vision education services:

> Vision is a main sensory area that [J.G.] needs to use for learning as his visual processing skills improve. The more his vision is utilized and developed with special techniques and modifications, the greater [his] access to information will be. Improving [J.G.'s] visual skills will ultimately help him function with more

---

[7] There are minor differences in certain programs that both schools offer. For example, Hope Academy's 2017-18 educational plan for J.G. includes individual speech therapy four times a week and speech therapy in a group of no more than two students once a week, while the Brain Institute's 2018-19 educational plan for J.G. provides for individual speech therapy five times a week, but no group speech therapy. (See 2017-18 Hope Academy Educational Plan (Dkt. No. 31-2) at 14; Ashanti Decl., Ex. I (Brain Institute Educational Plan) (Dkt. No. 18-2) at 50)

16

consistent visual responses and will increase his ability to interact with his
environment.

(Ashanti Decl., Ex. I (Brain Institute Educational Plan) (Dkt. No. 18-2) at 21) However, the Brain Institute was not equipped to offer the recommended thrice-weekly vision education services – nor the monthly parent training and counseling sessions – when J.G. began attending school at the Brain Institute.[8] Moreover, while the record indicates that the Brain Institute began offering parent counseling services in August 2018, there is no evidence that J.G. has received vision education services while attending the Brain Institute. Given these circumstances, Plaintiff has not demonstrated that the Brain Institute's educational program for J.G. is substantially similar to the educational program he received while at Hope Academy.

This conclusion is consistent with the reasoning of the IHO and SRO, both of whom found that the Brain Institute's educational program was not substantially similar to the educational program J.G. had received at Hope Academy, which was nearly identical to the 2016 DOE IEP. (See Ashanti Decl., Ex. K (IHO Decision) (Dkt. No. 18-3) at 94 ("Even if the Parent had established that the Student's March 2016 IEP was the last agreed upon and implemented IEP at [Hope Academy], the Hearing Record does not support a finding that the [Brain Institute's educational] program is substantially similar to [Hope Academy's educational program] or that [the Brain Institute] is implementing the March 2016 IEP. [The Brain Institute] did not have PCAT [Parent Counseling and Training] and VES [Vision Education Services] available as related services as of the time that the Student began to attend the school, or as of the commencement of the within proceeding. . . ."); id., Ex. M (SRO Decision) (Dkt. No. 18-3) at

---

[8] Indeed, as of the August 21, 2018 impartial hearing, the Brain Institute was still not equipped to provide vision education services. (See Ashanti Decl., Ex. J (Hearing Tr.) (Dkt. No. 18-3) at 51, 60)

17

155-56 ("[E]ven assuming for the sake of argument that the March 2016 IEP was the last agreed-upon IEP to establish pendency, the hearing record does not establish that [the Brain Institute] could be found to be the student's pendency placement by virtue of being substantially similar to the March 2016 IEP program and services. . . . At the impartial hearing, the director's testimony revealed that, while [the Brain Institute] provided the student with some of the same special education and related services mandated in the March 2016 IEP, the hearing record lacks evidence that [the Brain Institute] was providing the student with vision education services, [and] parent counseling and training. . . .")

Because Plaintiff has not demonstrated that Brain Institute's educational program for J.G. is substantially similar to Hope Academy's educational program for J.G., Plaintiff's application for a temporary restraining order and preliminary injunction will be denied.

## CONCLUSION

For the reasons stated above. Plaintiff's application for a temporary restraining order and preliminary injunction is denied. The Clerk of Court is directed to terminate the motion. (Dkt. No. 17)

Dated: New York, New York
      July 10, 2019

SO ORDERED.

*Paul G. Gardephe* (signature)

Paul G. Gardephe
United States District Judge

18